By the Court.
Bosworth, Ch. J.
—The testimony of Rosseau is direct and explicit that no goods were hoisted unless he or the defendant gave the orders for opening the hatches. No witness contradicts this testimony; some of the witnesses testify that, the hoistway was, sometimes, used between twelve and one o’clock. Rosseau does not deny this. But none of those witnesses testify that, it was used between twelve and one o’clock, without orders, for opening the hatch, having been first given by Rosseau, or the defendant.
*597 Neither does any one testify that, it was a common thing to open the hatches, without first obtaining orders from Rosseau or the defendant authorizing it, or that the defendant knew that, any workman had done it, in any instance, without having- had orders to do it.
The only witness who, contradicts, in any way the testimony of Rosseau, viz.: “when we did use the hatchway, I stood by to see the goods delivered,” is Degen, who said: “Sometimes the bookkeeper stood at the door when it, (supplies) was sent up, not always.” Yet Degen specifies no instances of this kind, nor does he enter into any details, respecting any such occurrence, tending to show that, Rosseau omitted to stand by, when the hoistway was open by the orders of himself or of the defendant, or to the knowledge of either of them.
Rosseau testifies that he did not know the hoistway was open, or was being used, on the occasion in question, until after the accident. No one contradicts him. No one testifies that the defendant ordered, or authorized any one to open it, or was spoken to on the subject. White and Degen were the persons who obtained such permission or received such authority, (as the case is presented to us) if they were given by Rosseau or the defendant to any one. But neither White nor Degen testify to any such fact.
The fact that, Madame Maillard’s father said, “John, Mr. Maillard tells me to shut the door, it is very cold,” is not competent evidence to prove any fact, and would, doubtless, have been excluded had it been objected to. But though received without objection, it is not apparent that, it tends to show that, the defendant knew the hatchway was then open, or if he might suspect it was open that, he had' any occasion to conjecture that, it had been opened without the orders of Rosseau, or without his being present to see to the hoisting of the goods.
When evidence as explicit and direct as that of Rosseau had been given, I think more evidence on the part of the plaintiff was necessary, than she produced, to warrant the conclusion that, any of the defendant’s workmen, even occasionally, opened the hatch and hoisted goods, with any knowledge» on the part of the defendant, that they did so without the order of Rosseau.
If it be true that, when the hatch was authorized to be opened, *598 it was so authorized by the order of Rosseau,. and if it be also true that, on such occasions he stood by to see the goods delivered, and if it be true that, on the occasion in question it was opened 'without the knowledge or direction of either of them, then it was so opened without any fault or negligence of the defendant, and by the careless and unauthorized act of White or Degen, or of both of them.
In thus acting, they were not acting in the scope of their employment, for neither of them had authority to open it, or had been allowed, with the knowledge of either Rosseau or of the defendant, to open it.
If such be the truth of the case, the deceased, if himself free from fault, was injured by the carelessness and improper conduct, of those who opened the hatch, without any direction, so to do, from either Rosseau or the defendant, and without the knowledge of either of them.
If injured by the negligence of a fellow-servant, who was engaged in the same general business as himself, their common principal is not liable, although the employments of the two were distinct; both being necessary, to the prosecution of the business. (Coon v. The Syracuse and Utica Railroad Company, 1 Seld., 492.)
It may, possibly, be made to appear on another trial, that the workmen were allowed by the defendant, to open the trap and use the hoistway, without obtaining his permission or that of Rosseau; but we think the evidence, in the case before us, does not warrant that conclusion.
On the contrary, the explicit testimony that it could not be rightfully opened, without the order of Rosseau, on an application to him, or on an application to the defendant, is, on a fair view of the whole evidence, uncontradicted.
If it be true, that the workmen, without orders from Rosseau or from the defendant, did assume, with the knowledge of the defendant, to open the trap and use the hoistway, it would seem that, it would be easy to prove the fact that, in some instances, or on some occasions which could be specified, it had been done. But no such proof has been given.
If the hatch had been used as Rosseau states it was, there might be no negligence on the part of the deceased, on seeing *599 the door shut, in assuming that the trap was down, and in opening the door and walking in, as one naturally would do, who had no reason to suppose that he was exposing himself to danger in so doing.
On the other hand, if it was a common thing to use the hoist-way, at all hours, and as well between 12 at noon, and 1 P. M., (when the hands were usually absent to get their dinner,) as at other hours, and that any workman, who had occasion to use it, was at liberty to do so, and in the habit of doing so, and that it was not common to use guards or other precautions to advertise the workmen, when in use, that it was open, and all this was known to the deceased; it might be an act of great negligence on the part of the deceased, to walk heedlessly and hurriedly in, without first pausing to see the condition of the hatchway.
We do not think there was any error in refusing to dismiss the complaint. When that motion was made and denied, White was the only witness who had been examined. As the case then stood, there was this large opening, some six feet square, coming close up to the only door which the workmen were permitted to enter. It was open, without anything being done to advise Karl that it was in use. The testimony of White implies, though it does not expressly affirm, that the door was usually open, when the hatchway was open.
The testimony he gave, though somewhat vague and indefinite, was calculated to induce the belief that, he was using the hatchway, as he did then use it, with the knowledge of the defendant. We are not prepared to hold, if such were the facts, that the deceased did not fall through the hatchway, by reason of the negligence of the defendant.
It is with great reluctance that we interfere with the verdict of a jury, in a case submitted to them under instructions which we must assume to have been correct, and satisfactory to both parties, as no exception was taken to them by either.
But assuming the testimony, as it is presented to us, in respect to the regulations respecting the use of the hatchway, and as to the precautions employed, whenever it was used with the knowledge of the defendant, or of Rosseau who had charge of it, to be correct, and that on the present occasion, it was opened1 without the authority, or knowledge of either of them, until after the *600 accident happened; then it would follow that the sad calamity for which the plaintiff seeks to subject the defendant to damages, happened without his fault, and by the fault of a fellow-workman of the deceased.
We think the evidence given, when carefully considered, tends only to the conclusions last stated, and that the ends of justice require that a new trial should be granted.
A new trial is accordingly granted, on payment of the costs of the trial. The costs of the motion for a new trial and of the appeal, to be costs in the cause and abide the event.